[Crim. No. 1631. Fifth Dist. Aug. 9, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH LOUIS MUNOZ, Defendant and Appellant.

COUNSEL

Alan M. Caplan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, William E. James, Assistant Attorney General, and Arnold O. Overoye, Eddie T. Keller and Charles J. James, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GARGANO, J.—By grand jury indictment, appellant Joseph Louis Munoz was accused of the sale of heroin in violation of section 11501 (now § 11352) of the Health and Safety Code. Thereafter, appellant entered a plea of not guilty to the charge. He also moved for a change of venue; the motion for change of venue was denied and the cause was set for jury trial.

On the morning of appellant's trial, appellant and his trial counsel convened in the trial judge's chambers so that the judge could inform appellant of the consequences of admitting or denying a prior conviction. During this proceeding, the following occurred:

"THE DEFENDANT: I am not getting too much help from [my attorney].

"MR. BALLARD [Acting Public Defender]: I have already given him advice with respect to the prior.

"THE DEFENDANT: You don't want to fight the case. I tell him the way it happened, and he—he tells me, "You are guilty; you ain't got a chance." What kind of defense do I have, if I listen to him?

"THE COURT: I am sure of this. When your attorney talks to you privately, he talks straight to you and gives you the benefit of his advice and his opinion of what you should do. How he behaves out in the courtroom is a different matter. He is bound by his oath, and he will do a good job.

". . . . . . . . . . . . . . . .

"THE COURT: Let the record show the Defendant admits the prior conviction, and when the Clerk reads the Amended Indictment to the Jury, that charge will not be read to the Jury.

All right, let's go out in open Court.

"THE DEFENDANT: What are we going to do about my lawyer?

"THE COURT: He is going to represent you out there.

"THE DEFENDANT: Stay on the transcript. I say, "No." I don't want him. I want Mr. Gendron.

"THE COURT: He is going to represent you. Take the Defendant back into the Courtroom.

"THE DEFENDANT: You understand I don't want Mr. Ballard to be my lawyer?

"THE COURT: Mr. Ballard has been appointed to represent you and he will represent you in this trial. Let's get this trial going."

At the conclusion of the jury trial, the jury returned a verdict finding appellant guilty as charged in the indictment. Appellant was sentenced to state prison for the term prescribed by law, and this appeal followed. Because we agree with the assertion that the trial judge failed to inquire sufficiently into appellant's reasons for believing that he was not receiving competent representation from his court-appointed counsel, we reverse the judgment. As the Supreme Court said in *People* v. *Marsden*, 2 Cal. 3d 118, 123-124 [84 Cal.Rptr. 156, 465 P.2d 44]: "A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom. Indeed, '[w]hen inadequate representation is alleged, the critical factual inquiry ordinarily relates to matters outside the trial record: whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choice of trial tactics and strategy.' [Citation omitted.] *Thus, a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.'* [Citation omitted.]" (Italics added.)

The Attorney General argues that the *Marsden* rule only requires a trial judge to listen to a defendant's reasons for asking for a substitution of attorneys. He insists that the rule does not require a judge to inquire into those reasons.

The *Marsden* court was presented with an extreme situation. However, the mandate of that decision is not limited necessarily to a case where the trial judge refuses to give the defendant the opportunity to be heard as the Attorney General suggests. ■ On the contrary, the *ratio decidendi* of the high court's opinion tells us that the judge's obligation to listen to an indigent defendant's reasons for claiming inadequate representation by court-appointed counsel is not a pro forma function. It tells us also that under some circumstances a court's ruling denying the request for a substitution of attorneys without a careful inquiry into the defendant's reasons for requesting the substitution "is lacking in all the attributes of a judicial determination." (See *People* v. *Groce*, 18 Cal.App.3d 292, 296-297 [95 Cal.Rptr. 688]; *People* v. *Green*, 15 Cal.App.3d 524, 527 [93 Cal.Rptr. 84].)

In the case at bench, appellant accused his attorney of not wanting to defend him; he said that the attorney told him that he was guilty and that he did not have a "chance." Yet, despite the attorney's silence in the face of such a serious accusation, the trial judge made no inquiry of any kind. He merely informed appellant that when an attorney talks to his client privately, he talks "straight," but in the courtroom the lawyer is bound by his oath to do a good job.

■ It is basic that the attorney-client relationship contemplates trust and mutual cooperation, particularly when the attorney is defending the client's liberty. ■ It is also basic that an attorney should not be appointed to represent an indigent defendant unless he "is uncommitted to any position or interest which would conflict with providing an effective defense" (*Drumgo* v. *Superior Court*, 8 Cal.3d 930, 935 [106 Cal.Rptr. 631, 506 P.2d 1007]); and if after appointment the attorney becomes convinced of his client's guilt to the extent that he is unable to defend the client vigorously and effectively at the trial, he should withdraw from the case. ■ In our view, the court's ruling denying appellant's request for a substitution of attorneys, without an inquiry into the state of mind of the court-appointed attorney and without attempting to ascertain in what particulars the attorney was not providing appellant with a competent defense was tantamount to a refusal on the part of the court to adjudicate a fundamental issue; the court's failure to make the inquiry also resulted in a silent record, making intelligent appellate review impossible.

The case of *People* v. *Groce, supra,* 18 Cal.App.3d 292, 297, is supportive of appellant's position. In that case, the defendant was charged with assault with a deadly weapon, and he complained to the court because his counsel had not called the physician who attended the injured victim or subpoenaed the hospital records; the trial court ordered the trial to proceed without inquiring into counsel's reasons. The appellate court stated that "[r]ather than [to] guess" at the attorney's reasons for his failure to call the physician or to subpoena the hospital records, it would reverse the judgment. It is significant that the Supreme Court denied the People's petition for a hearing before the high court despite the strong dissent of Presiding Justice Draper expounding the opposite viewpoint.

The judgment is reversed.

Brown (G. A.), P. J., and Franson, J., concurred.

A petition for a rehearing was denied September 6, 1974, and respondent's petition for a hearing by the Supreme Court was denied October 17, 1974.