[Crim. No. 30303. Second Dist., Div. Five. July 27, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES HERNANDEZ CRUZ, Defendant and Appellant.

**COUNSEL**

Paul N. Halvonik, State. Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Richard A. Curtis and Patricia Nelson, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—In counts I through III, defendant James Hernandez Cruz was charged by information with separate violations of Penal Code[1] section 245, subdivision (a) (assault with a deadly weapon). Each of the above counts included an allegation that defendant used a firearm within the meaning of section 12022.5 in the commission of the assaults. In count IV of the information, defendant was charged with a violation of section 12021 (possession of a concealable firearm by a former felon). Count IV was based upon an alleged 1968 conviction of robbery. The information was later amended to include an additional prior conviction for robbery, which allegedly occurred in 1973.

Defendant was arraigned and pleaded not guilty with the assistance of a deputy public defender. Prior to the selection of the jury and trial, under circumstances that will be discussed *infra,* defendant requested to proceed in propria persona (hereinafter referred to as pro. per.). After questioning defendant concerning his competency and warning him about the dangers involved in self-representation, the trial court granted defendant's request. Prior to trial, defendant denied the alleged prior felony convictions.

After a jury trial, defendant was found guilty as charged in the information. At the sentencing hearing the trial court struck the use of a firearm allegation as to counts II and III. Defendant was sentenced to state prison for the term prescribed by law. The sentences on counts I

---

[1]Unless specifically noted, all statutory references are to the Penal Code.

through III were ordered to run concurrently with each other, and consecutively to the sentence imposed on count IV. Defendant appeals from the judgment.

The evidence introduced by the prosecution established that shortly after midnight on September 5, 1976, defendant attempted to gain entrance into a bar. The doorman, thinking that defendant had already had too much to drink, refused to let defendant in. Defendant without incident left the bar. Approximately three to five minutes later, defendant returned to the bar armed with a small handgun. Defendant fired five shots, each hitting the doorman. Two of the bullets passed through the doorman and hit two persons inside the bar. Defendant then fled and was chased by the manager of the bar. During the chase, defendant turned and twice pointed the gun towards the manager. Defendant did not fire his gun at the manager. A short time later defendant was captured by police officers. The handgun used in the shootings, apparently thrown by defendant during the chase, was recovered.

Defendant principally relied upon the defense of unconsciousness due to involuntary ingestion of L.S.D. and alcohol. The prosecution had in its case in chief presented evidence that defendant, though slightly intoxicated, had acted as if conscious. Testifying in his own behalf, defendant stated that during the afternoon of September 4 he had visited the house of a friend. The claim was made by defendant that the friend, without defendant's knowledge, placed LSD in defendant's beer. Defendant later consumed the beer. Defendant testified that shortly thereafter he began to feel "like I was—all myself was just being drawn into inner parts of my body as if it was just being—I don't know. I felt really weird." Upon the inception of such feelings, defendant went home to his wife. From that point until he awoke in a hospital the next day, the defendant testified (with the exception of a vague recollection of trying to enter a church) he could not remember anything. Defendant called witnesses who gave testimony relating to defendant's abnormal conduct during the night of September 4-5: defendant watched television without the sound on; defendant drove erratically on the freeway at speeds up to 90 miles per hour; and defendant abandoned the car, saying something about finding a church. Witnesses also testified that defendant had consumed approximately a fifth of brandy within a short period of time during the evening of September 4.

On appeal, defendant does not challenge the sufficiency of the evidence supporting the judgment. Instead, defendant contends that

errors committed by the court and prosecution require reversal. Specifically, defendant assigns as error the following:

(1) *Self-representation*: there was no effective waiver of his right to appointed counsel; the court improperly denied his motion to withdraw his waiver of counsel.

(2) *Continuances*: the master calendar and trial court judges abused their discretion in denying defendant's motions for continuances to prepare and investigate his defense, to secure witnesses, and to appoint an investigator.

(3) *Prior Convictions*: the trial court erroneously permitted into evidence prejudicial and immaterial information contained in exhibits used by the prosecution to prove defendant's prior convictions; the trial court improperly instructed the jury concerning the prior convictions (CALJIC No. 17.25).

(4) *Unconsciousness Defense*: CALJIC No. 4.31 (rev. 1972) given by the trial court concerning the burden of proof on the issue of unconsciousness was prejudicially confusing.

(5) *Multiple Punishment*: under section 654, defendant's possession of a concealable handgun, under the facts of the case, constitutes one transaction for which defendant cannot be punished under sections 12021 and 245; that the section 12021 violation as the lesser offense must be stayed.

(6) *Modification of Sentence*: the 1968 conviction, as an element of count IV, cannot be used to enhance the minimum sentences under counts I through III.

The numerous assignments of error which have merit require us to reverse defendant's conviction.

## 1. SELF-REPRESENTATION

A. ▇▇ *Defendant did not effectively waive the right to counsel*

The duties of a trial judge faced with a motion for substitution of an appointed attorney by an indigent defendant have been expanded. ▇▇ While granting or denial of a defendant's motion is still a

matter vested in the discretion of the court, *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], requires a trial judge to listen to a defendant's offer to relate specific instances of attorney misconduct or inadequacy. In *Marsden,* the Supreme Court found it error for a trial court to have denied a defendant's motion for substitution of attorneys solely on the basis of courtroom observations, where it prevented the defendant from articulating his reasons for desiring the change. *Marsden* was followed by *People* v. *Munoz* (1974) 41 Cal.App.3d 62 [115 Cal.Rptr. 726]. The court in *Munoz* stated, at page 66: "[T]he mandate of [the *Marsden*] decision is not limited necessarily to a case where the trial judge refuses to give the defendant the opportunity to be heard as the Attorney General suggests. On the contrary, the *ratio decidendi* of the high court's opinion tells us that the judge's obligation to listen to an indigent defendant's reasons for claiming inadequate representation by court-appointed counsel is not a pro forma function. It tells us also that under some circumstances a court's ruling denying the request for a substitution of attorneys without a careful inquiry into the defendant's reasons for requesting the substitution 'is lacking in all the attributes of a judicial determination.' [Citations.]" According to *Munoz,* the duty of the trial court includes "an inquiry into the state of mind of the court-appointed attorney" and an attempt "to ascertain in what particulars the attorney was not providing appellant with a competent defense." (41 Cal.App.3d at p. 66.) *Munoz* has been cited with apparent approval by the Supreme Court in *People* v. *Lewis* (1978) 20 Cal.3d 496, 499 [143 Cal.Rptr. 138, 573 P.2d 40].

It has been suggested in *People* v. *Molina* (1977) 74 Cal.App.3d 544, 549 [141 Cal.Rptr. 533], that the trial court's duty of inquiry is triggered only when the nature and degree of defendant's dissatisfaction amounts to an "assert[ion] directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel."

In the instant case defendant charged, not the particular deputy appointed to represent him, but the office of the public defender as a whole with improper conduct. Defendant made his charge early in the proceedings, on October 4, 1976, where the following occurred:

"MR. GALLAGHER [Deputy Public Defender]: Well, Mr. Cruz now indicates to me, Your Honor, that he has—the reason he wants to go pro per is that he has a general conflict of interest with the public defender's office.

"THE DEFENDANT: I think it's far more than general.

"THE COURT: Do you want to elaborate on what a general conflict of interest is? What's your problem?

"THE DEFENDANT: It's a definite conflict of interest, Your Honor. In the past I have been represented by the public defender's office and each and every time the record will show there's never been any investigation into the cases I've had, there's been nothing as far as anything I've asked them to do, certain things and they said, no, there is no such thing. And we just got a definite conflict. [¶] I wrote a letter to the public defender's office and I got a letter back stating, well, that I shouldn't, you know, look to them for any more assistance and so forth. That was in '73."

The court then questioned defendant as to other matters.

The proceeding regarding defendant's request to represent himself was continued until October 22, 1976. At the morning session defendant stated: "Because of what has taken place since this [*sic*] proceedings in this matter started, beginning in Municipal Court, I cannot and do not accept Public Defender as counsel.

"THE COURT: So you want to be your own lawyer?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right, we will put the matter over to this afternoon. . . ."

In the afternoon session, the court immediately proceeded to test defendant's competency and warn him of the pitfalls of self-representation. However, the court did not again question defendant concerning his dissatisfaction with appointed counsel.

 The court clearly satisfied the requirements of *Marsden*. At no time did the court cut off defendant or prevent him from offering his reasons for his dissatisfaction. However, the court should have inquired further into the particulars of defendant's claim. Further, the court failed completely to ask the deputy, a representative from the office of the public defender, to respond to the charges. (*Holloway* v. *Arkansas* (1978) 435 U.S. 475 [55 L.Ed.2d 426, 434, 98 S.Ct. 1173].) The court failed in its duty of inquiry. If defendant's allegations were true, he would have surely

been denied effective representation in the present action; denial of a right he is constitutionally guaranteed. The court's failure to make the necessary inquiry resulted in a silent record making intelligent appellate review of defendant's charges impossible.

Further, the record that is before us clearly indicates that defendant's decision to go pro. per. was not based on trial tactics that he could better persuade the jury, but was based on a lack of viable alternatives. The trial court's failure to inquire precluded the possibility of a substitution of counsel. Defendant was left with the choice between counsel who he mistrusted or proceeding in pro. per. Yet "[i]t is basic that the attorney-client relationship contemplates trust and mutual cooperation, particularly when the attorney is defending the client's liberty." (*People* v. *Munoz, supra,* 41 Cal.App.3d 62, 66.) Defendant, perceiving the alternatives as imposed and as limited by the court, chose self-representation.

The knowing and intelligent waiver of counsel envisions the election between viable alternatives. Defendant's decision to proceed in pro. per. was predicated upon his belief, mistaken or not, that he could not expect effective representation from the public defender's office. This belief was effectively reinforced by the court's failure to fully explore defendant's charges. Under the circumstances, defendant cannot be said to have been fully apprised of his right to counsel and therefore did not effectively waive that right.[2] (Cf. *People* v. *Carter* (1967) 66 Cal.2d 666, 670 [58 Cal.Rptr. 614, 427 P.2d 214]; *In re Turrieta* (1960) 54 Cal.2d 816, 820 [8 Cal.Rptr. 737, 356 P.2d 681].)

The People's reliance on *People* v. *Wright* (1977) 72 Cal.App.3d 328 [140 Cal.Rptr. 98], is therefore misplaced. In *Wright,* the court stated at page 340: "The principles of *Marsden* and *Munoz* can have application only if the trial court rules against a defendant who claims inadequate representation by his attorney and seeks a new lawyer or to represent himself." The *Wright* court found that defendant's election to proceed in pro. per. precluded his claim of error under *Marsden* and *Munoz.* The People on appeal argue that defendant is similarly barred. However, in *Wright* there was no claim of ineffective waiver of counsel. The defendant there stated that "he was willing to risk his freedom on his own ability

---

[2]Contrary to defendant's contention, he otherwise effectively waived counsel. The court's inquiry into mental competence, its warnings on the dangers of self-representation, and instruction on possible punishment were sufficient. (*People* v. *Dale* (1978) 78 Cal.App.3d 722, 730 [144 Cal.Rptr. 338].) The type of inquiry asserted by defendant as necessary to test for competence, etc., could impinge on a defendant's right to proceed in pro. per. and provide the grounds of an appeal on that basis.

rather than on the ability of experienced counsel." (*Id.,* at p. 340.) Further, in *Wright* the court emphasized the fact that the defendant failed to request the reappointment of counsel. (*Id.,* at p. 340.) Both of the factors absent in *Wright* are present in the instant case. We have ruled that defendant did not effectively waive counsel. Further, defendant made a request for the reappointment of counsel. The denial of the request forms the basis of his next assignment of error.

B.　　*The court abused its discretion in denying defendant's request to withdraw his waiver of counsel and for the reappointment of counsel.*

On the date originally set for trial, November 23, 1976 (the case trailed until Nov. 29), defendant moved to withdraw his waiver of counsel and sought the reappointment of the deputy public defender previously assigned to his case. Defendant's motion immediately followed the court's refusal to continue the case for two to three weeks. The court then called a recess to secure the attendance of the deputy public defender. With the deputy public defender in court, the judge questioned him concerning his availability and readiness to proceed to trial. The deputy public defender answered that upon being relieved of counsel, the case went into the "closed files," indicating that the public defender's office had ceased its involvement in the case on October 22. Further, the deputy public defender indicated that his assignment to the superior court had ended, and that he could not, in any event, personally handle the case. In his estimation, the deputy public defender stated that it would take in excess of three weeks for another deputy to prepare the case. The court then concluded: "Well, it seems to the Court that the defendant's request now to be assigned a lawyer to try his case is not timely and we'll require the case to go to trial when a court is available."

The decision whether to reappoint counsel after a waiver of that right appears to be a matter within the discretion of the trial court. (*In re Connor* (1940) 16 Cal.2d 701, 709 [108 P.2d 10]; *People* v. *Ruiz* (1968) 263 Cal.App.2d 216, 223 [69 Cal.Rptr. 473].)　　The court, in *People* v. *Elliot* (1977) 70 Cal.App.3d 984 [139 Cal.Rptr. 205], suggested the criteria to be used by an appellate court in reviewing the propriety of a trial court's denial of a defendant's request to withdraw his waiver of counsel: "Relevant factors should include, among others, the following: (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the proceedings, (4) disruption or delay which reasonably might be expected

to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney." (70 Cal.App.3d at pp. 993-994.) Further, the *Elliot* court stated that it is the duty of the trial court to establish a record based upon the above factors. (*Ibid.*)

Under remarkably similar facts to those present in the case at bench, the court in *Elliot* found that the trial judge abused his discretion in denying defendant's motion to withdraw his waiver of counsel. ■ Here, too, we find that the court abused its discretion.

*The reasons set forth for the request:* In *Elliot* immediately prior to defendant's request, the prosecution offered to make a showing of proof (so as to argue it in its opening statement) that defendant had committed an uncharged offense. Defendant objected, and then proceeded to request the reappointment of counsel, stating that he "could not successfully compete with the prosecutor." (*Id.,* at p. 994) The court in *Elliot* declared the reason given to be valid. (*Id.,* p. 997.) Equally as valid was the defendant's statement given in the present case that he felt incompetent to proceed further in pro. per. Further, it does appear that defendant's motion was made in good faith and not for the purposes of delay and obstruction.

*The length and stage of the trial proceedings:* In *Elliot,* defendant made his motion after a jury had been selected and just prior to the prosecution's opening statement. Further, the court in *Elliot* found the trial not to have been a lengthy one. The motion, in the present case, was made before the master calendar judge, prior to assignment of a courtroom. Thus, defendant provided earlier notice of his motion. Prior to the court's ruling on defendant's motion, the prosecution estimated that the case would require only two or three days of trial. In actuality, the trial took five days to complete.

*Disruption or delay which reasonably might be expected to ensue from the granting of such motion:* The continuance entailed in the substitution requested by the defendant in *Elliot* would have required a 10-day delay. In the present case, the deputy public defender estimated a period in excess of three weeks would have been required. However, it is noted that here, as opposed to *Elliot,* the continuance requested was not by the attorney who would have actually handled the case. A truer estimate of

the time required could have been obtained through the court calling in a deputy public defender who had the capability and authority to handle the case.

In both *Elliot* and the present case, no showing was made by the prosecution that the requested continuances would cause a disruption in the calendar of the courts, that it would be detrimental to the prosecution of the cases, or that it would be contrary to the interests of justice. Due to this failure, it must be presumed that the continuance requested by defendant in the instant case would not have caused disruption to the court or prejudice to the prosecution beyond that normally involved in a three-week delay.

*The likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney:* It can be said that in most cases a trained attorney will be better able to present a defense than the defendant himself. Thus, this factor, the likelihood of effectiveness of the pro. per. defense, will in most cases weigh in favor of a reappointment of counsel. This factor gains added weight when the defense asserted is complex. The defense of unconsciousness, asserted in the present case, is such a defense.

*The reason for denial of request:* Although not specifically enumerated within the list of factors set forth, the court in *Elliot* was strongly influenced by the reason for the trial court's denial of the defendant's motion. After the defendant in *Elliot* had made his motion, the trial court called in the deputy public defender who had been previously assigned to the case. The deputy was asked by the court whether he could immediately proceed to trial. After the deputy stated that a 10-day continuance would be needed, the trial court denied the motion. Upon these facts the court in *Elliot* concluded, "[f]rom the trial court's statements, it is obvious that the trial judge only would consider granting defendant's request if the deputy public defender was prepared to proceed at once, and with the jury that had been selected to try the case." (70 Cal.App.3d 984, 996.) In the instant case, admittedly there is absent the explicit statements made by the court. Nonetheless, we can infer from the record that the principal reason for this court's denial of defendant's motion was the deputy public defender's lack of capacity to proceed immediately to trial. This factor should be irrelevant to the consideration of a defendant's motion.

Here, as in *Elliot,* the trial court abused its discretion in denying defendant's motion to withdraw his waiver of counsel and for the reappointment of counsel.

### 2. CONTINUANCE TO PREPARE AND INVESTIGATE DEFENSE

The shootings for which defendant was charged occurred in the morning hours of September 5, 1976. Immediately after the shooting, defendant was taken into custody, and was held until his release on bail on November 19. The trial in the matter was set for November 23 but trailed until November 29, when trial commenced.

From time of arraignment until conclusion of trial, the case was continued only once from October 4 to October 22, in order to consider defendant's motion regarding representation. During the period the case trailed, defendant, acting as his own attorney, was required to remain in court so as to be ready if the case was called.

Prior to granting defendant's motion to proceed in pro. per., the master calendar judge repeatedly warned defendant that no continuances would be granted. Typical of the warnings given was the following colloquy:

"THE COURT: You understand that I am fully cognizant of the fact that it is very difficult to prepare a lawsuit when you are in custody and I am sure you must be aware of that, are you not?

"THE DEFENDANT: Yes, sir.

"THE COURT: But despite that fact, if you proceed and as your own lawyer in pro per, you will be expected to be ready for trial on November 23rd and telling me at that time or the Court that you have had some problems because you are in custody and you are not ready to go to trial because you have been in custody and you haven't been able to prepare the lawsuit properly will not be considered a good cause for a continuance. [¶] Do you understand what I have said to you?

"THE DEFENDANT: Yes, sir.

"THE COURT: You still want to be your own lawyer?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. We will see you on the 23rd."

On November 23 defendant filed a formal written motion for a continuance with the master calendar judge. Defendant's principal ground supporting his motion was the lack of time to adequately prepare his case. Defendant requested a continuance of two months. At oral argument on the motion, occurring on November 23 and 24, defendant disclosed an additional ground for the continuance, that of securing the attendance of an allegedly material witness.

At the November 23 proceeding, the deputy public defender (who was present in court, having been called concerning defendant's motion to withdraw waiver of counsel) argued in behalf of defendant: "There is, to my recollection and to my present discussion with Mr. Cruz, a witness who will be very material and relevant and the majority of the defendant's position rests with him and other people who are present at this point in time that we're talking about. It will be necessary to, although Mr. Cruz knows where he is, to interview him, subpoena him and determine exactly what his position will be with regard to testimony. It is probable that this witness will not just be an unfriendly witness, it might involve the witness taking the position in court that will be detrimental to his penal interests." Shortly thereafter, the deputy public defender continued: "Mr. Cruz has not had a personal contact with this witness since being released on Friday. He's made, he claims, numerous efforts to contact him. He has, by reason of other mutual acquaintances, determined now where he is. He has not, however, been able to obtain a face-to-face confrontation for the purpose of subpoenaing him, serving him with a subpoena for the purpose of discussing his position." On November 24 defendant arguing personally before the court renewed his motion for a continuance. Defendant's motions were denied.

On November 29, defendant moved for a continuance before the trial judge, requesting a period of two or three weeks in order to prepare his defense and to secure witnesses. In relevant part, defendant stated: "I was granted a pro per status on October the 22nd, and I gained access to the law library in the county jail on October 25th, and from that date until November the 19th I was confined in custody. [¶] I had no access to outside—except for a visitor that I had coming up to see me, and that visitor had no car whatsoever, no form of transportation; so she would take the bus up to the county jail to see me. [¶] Since I've been out on the 19th, immediately there following on the 23rd I came to court. That was a Tuesday, and—last Tuesday, and I've been in court ever since in the

court next door. [¶] I haven't had a chance to prepare the motions that I wanted to prepare, and I would at this time, Your Honor, reenter my motion for a continuance on the grounds that I am not ready to proceed, and I haven't been given what I feel—I really haven't been given a reasonable amount of time to prepare for the defense."

Then defendant proceeded to describe the witnesses needed and the efforts he used to secure their attendance. Based on defendant's claim, the trial court conducted an *in camera* session outside of the presence of the prosecution. Again in open court, the trial court denied defendant's motion, stating:

"Now, you were in custody at that particular time, that's true. Let's assume for the moment that you're still in custody here today. It's unlikely, if you were still in custody, that you would be any better prepared in custody than you are, apparently, able to prepare being out of custody. [¶] Apparently you are in no worse position now being on bail than you would have been if you had remained in custody. I don't know how you could have done any more than you apparently have done up until this point in time.

". . . . . . . . . . . . . . . . . . . . . . ."

"I just don't think that I'm inclined to want to grant this motion for a continuance for two weeks or three weeks or any period of time in the future, because it's just too speculative as to the availability of any of these witnesses in the future, and when I consider that, together with what appears to me to have been a clear, unequivocal statement to you that you had to be ready for trial on the date set, all of that speaks for now going to trial."

■ The decision to grant or deny a continuance normally rests within the sound discretion of the trial court. (*People* v. *Buckowski* (1951) 37 Cal.2d 629, 631 [233 P.2d 912].) ■ While it is true that a defendant, who chooses to conduct his defense in pro. per. does so subject to the disabilities normally attendant upon the status as a prisoner (*People* v. *Chessman* (1951) 38 Cal.2d 166, 172-174 [238 P.2d 1001]), a pro se defendant must be given a reasonable opportunity to prepare a defense. (*People* v. *Maddox* (1967) 67 Cal.2d 647, 652 [63 Cal.Rptr. 371, 433 P.2d 163]; *People* v. *Moss* (1967) 253 Cal.App.2d 248, 251-253 [61 Cal.Rptr. 107] [disapproved on other grounds—*People* v. *Williams* (1970) 2 Cal.3d 894, 906 (88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Mendez* (1968) 260

Cal.App.2d 302, 306-307 [67 Cal.Rptr. 31].) The denial of a proper request for a continuance to prepare a defense constitutes an abuse of discretion and a denial of due process. (*People* v. *Moss, supra,* 253 Cal.App.2d 248, 253.)

■ Although a self-represented defendant is not entitled to special privileges and indulgences (*People* v. *Mattson* (1959) 51 Cal.2d 777, 794 [336 P.2d 937]), certain realities of pro. per. status must be taken into account in deciding to grant or deny a continuance in order to prepare a defense. In the instant case, defendant was in custody from the time of his arrest up until four days prior to the date set for trial. This fact, while not making preparation and investigation impossible,[3] did seriously hinder defendant's efforts. (See *People* v. *Mendez, supra,* at p. 307.) Defendant's principal defense was unconsciousness due to involuntary intoxication. Personal investigation was essential to the preparation of the defense. Such preparation, obviously, could not be conducted while in custody. Only defendant could reconstruct his whereabouts, and the events which transpired before and after leaving the presence of his wife. Further, it appears that defendant was the only one who personally knew the individual who allegedly spiked defendant's beer. Third-person efforts to secure his attendance at trial had failed. The friend's testimony, if secured, (he never testified), would have been material to the defense. Defendant's personal efforts, once released from custody, were hampered by the fact that he had to spend a great portion of the daytime hours trailing his own case. Defendant's difficulties were further compounded by the denial of his request for the assignment of an investigator. It is also noted that, with the exception of the period involved in the determination of his pro. per. status, defendant received no continuances. Essentially, defendant's requests made to the master calendar and trial judges were his first. In light of defendant's ineffective waiver of counsel and the improper denial of request to withdraw that waiver, the period involved in resolving his pro. per. status should not be charged to defendant. Whatever benefit was gained during the time he was represented by counsel was lost by those errors.

At the time defendant moved to withdraw his waiver of counsel, the deputy public defender stated that, as of that point, it would require a different deputy, if he be appointed, in excess of three weeks to prepare the case. As released from custody, defendant was, in effect, just starting to prepare his case. "If the public defender, a skilled, trained and experienced lawyer, needed time to prepare, how much more so did

[3]Defendant was granted county jail privileges pursuant to the "Pro Per Policy Memorandum" of the Los Angeles Superior Court.

appellant need . . . ." (*People* v. *Kerfoot* (1960) 184 Cal.App.2d 622, 646 [7 Cal.Rptr. 674].) "[H]e must be given, if he requires it, as much time to prepare for trial as an attorney; and if a reasonable continuance is necessary for this purpose, it must be granted upon timely request. To deny him that opportunity would be to render his right to appear in propria persona an empty formality, and in effect deny him the right to counsel." (*People* v. *Maddox, supra,* 67 Cal.2d 647, 653.) As contained in his written motion, defendant requested a two-month continuance. However, the master calendar judge was not bound by that figure. Notwithstanding, it was within his discretion and in the discretion of the trial court to grant a reasonable continuance. (*Id.,* at p. 654, fn. 3.) In any event, defendant later lowered his request to two or three weeks.

Under the circumstances of the case, defendant made a timely request for a continuance. It should have been granted, the denial of it was an abuse of discretion. Defendant was not given a reasonable opportunity to prepare his defense. The concern for orderly judicial administration must not be the means used to deny a defendant a full and fair trial.

### 3. PRIOR CONVICTIONS

A. ▪ *The trial court erroneously permitted the introduction of prejudicial and immaterial evidence of defendant's criminal record and personal history.*

In his defense, defendant testified in his own behalf. On cross-examination, the prosecution introduced into evidence two exhibits, Nos. 5 and 6, as proof of defendant's two prior robbery convictions. Prior to trial defendant had denied the priors. Exhibit No. 5 contained certified copies of five pages from the court record relating to defendant's 1972 conviction. Exhibit No. 6 was comprised of certified copies of four pages from the record of defendant's 1968 conviction. The prosecution asked defendant whether he was the person identified in the exhibits. Defendant attempted to object, but the trial court, relying on an in chambers ruling permitting the introduction of the exhibits, dismissed the objection.[4] Defendant answered that he was the person so identified.

---

[4] Contrary to the People's contention (*People* v. *McFarlan* (1932) 126 Cal.App. 777 [14 P.2d 1066]), defendant adequately objected to the entire contents of the exhibits. Initially, the prosecution sought to introduce the complete court records from each conviction. Based on objections from defendant and on the court's own initiative, the great bulk of the records were excised. The issue of prejudice and materiality of the portions of the records comprising the exhibits was clearly before the court. In receiving exhibits Nos. 5 and 6 into evidence, the court stated: "They've all been certified, and they have probative

Due to defendant's denial of the prior convictions, the prosecution was required to prove beyond a reasonable doubt that defendant had suffered the convictions, in order to (using the 1968 conviction) convict defendant of count IV and for purposes of enhancement of the minimum sentences for counts I through III. Defendant argues that the court erred by not excluding from evidence certain portions of exhibits Nos. 5 and 6 pertaining to his criminal record and personal history. This contention has merit.

Exhibit No. 5 relating to defendant's 1972 conviction, consisted of five pages. The first page contains an amended information charging defendant with two counts: the first count of robbery in violation of section 211 and the second count of assault with intent to commit great bodily injury, in violation of section 245, subdivision (a). The second and third pages of the exhibit reveal that defendant pleaded guilty to the first count and that the second count was dismissed in the interests of justice. The third page also contains a list of defendant's conditions of probation, including: "Not drink any alcoholic beverages and stay out of places where they are the chief item of sale. Cooperate with probation officer in plan to control abuse of alcohol. Not use or possess narcotics, other controlled substances or associated paraphernalia. . . . Submit to urinalysis. . . . Submit to skin checks. . . . Not have any dangerous or deadly weapon in his possession nor remain in any building or vehicle where any person has such a weapon nor remain in the presence of any armed person."

The fourth page of the exhibit consists of defendant's application for release on his own recognizance. Included in the application is personal information concerning his common law relationship with the woman with whom he was then residing and the number of children at the residence (the form does not indicate the parentage of the children). The last page of the exhibit is the front page of defendant's probation report. The report has repeated reference to the fact that defendant was charged in the second count with assault with intent to commit great bodily injury. In addition, the probation report has indirect reference to juvenile offenses. The report states that defendant was sent to juvenile probation camp and to the California Youth Authority.

Exhibit No. 6 contains a document relating conditions of probation for his 1968 conviction. These conditions include one on use and possession of narcotics. Also contained in the exhibit is a probation report which

value, and granted, they contain material that might be prejudicial to the defendant, but the probative value outweighs the prejudicial effect."

relates defendant's family history and a reference that defendant was committed to an unspecified institution.

In *People* v. *Richardson* (1946) 74 Cal.App.2d 528, 536-537 [169 P.2d 44], the court reversed a defendant's conviction on the ground that portions of an exhibit used to prove his prior convictions contained references to uncharged offenses, arrests and misdemeanor convictions. The court held that those portions of his criminal record should have been separated from the otherwise admissible portions of the exhibit. The exhibits, in the instant case, containing information regarding a charged but dismissed count for assault with intent to commit bodily harm and juvenile offenses was also error. The references should have been deleted as prejudicial. Of obvious prejudice was the dismissed assault count of the same crime as charged in counts I through III in the present action. Such reference suggested defendant's propensity for violent conduct. Of similar effect was defendant's conditions of probation relating to deadly weapons. Further, the prejudicial effect was not lessened by the court's instruction that the jury was not to consider evidence of prior convictions as evidence of guilt on the substantive charges. The instruction relates only to prior convictions and not to other portions of defendant's criminal record. (*People* v. *Richardson, supra,* at pp. 536-537.)

Equally erroneous and prejudicial were the references made to defendant's conditions of probation involving narcotics, controlled substances and alcohol. The People assert on appeal that "[defendant] was not prejudiced since his alcoholism and use of narcotics would tend to substantiate the defense which was pursued in the instant case." Quite to the contrary, such past use might have created the inference in the minds of the jury that the substances allegedly consumed by defendant prior to the shootings were voluntarily ingested. Voluntary intoxication would have defeated defendant's claim of unconsciousness as a complete defense. The jury was instructed that voluntary intoxication is not a defense. (CALJIC Nos. 4.20, 4.22.)

Further, contrary to the People's contention, the references to defendant's personal history were not probative as facts in helping to identify defendant as the person who suffered the convictions. The specifics relating to the crimes convicted, the dates and places of conviction, and the relative uniqueness of defendant's name (*People* v. *Luckett* (1969) 1 Cal.App.3d 248, 253 [81 Cal.Rptr. 539]), were sufficient for that purpose. Additionally, it is noted that defendant did not make identity an issue. The personal history references were surplusage. However, assuming

*arguendo,* that such evidence had some probative value, the value was substantially outweighed by the probability of prejudice. (Evid. Code, § 352.)

B. *The failure of the trial court to read CALJIC No. 17.25 in its entirety was either not error or was immaterial to the resolution of this appeal.*

The trial court in instructing the jury concerning defendant's prior convictions (CALJIC No. 17.25) failed to read the last four paragraphs of the instruction. The court read the following portion: "In addition to the crimes charged in the four counts of the Information it is also alleged that before the commission of such crimes the defendant was convicted of certain felonies. [¶] The defendant has denied the truth of the alleged prior convictions at the outset of the trial. [¶] In this case you must first decide the question of whether or not the defendant is guilty of the crimes charged in the four counts of the Information. [¶] You shall not consider the allegation of such prior convictions or evidence thereof, if any, as proof that the defendant committed the crimes charged in the four counts of the Information. [¶] However, the fact that the defendant has been convicted of a felony, if such be a fact, may be considered for the purpose of determining the defendant's credibility as a witness concerning the crimes charged. The fact of such a conviction does not necessarily destroy or impair the defendant's credibility, but it is one of the circumstances that you may take into consideration in weighing his testimony."

The omitted portions of the instruction state:

"If you find the defendant not guilty as to the crime[s] charged in the information, it will not be necessary to determine whether the allegation[s] of the prior conviction[s] [is] [are] true.

"If you find the defendant guilty of [one or more of] the crime[s] charged in the information, then it will be your duty to determine whether or not the allegation[s] of the prior conviction[s] [is] [are] true. If you find [any] such allegation[s] to be true or not true, as the case may be, you will sign the appropriate form of verdict.

"If you have a reasonable doubt as to whether the allegation[s] of such prior conviction[s] [is] [are] true, it is your duty to find the allegation[s] not true.

"A separate form of verdict will be supplied you for your decision on the question of the alleged prior conviction[s]."

Contrary to defendant's contention, the failure to read the first two omitted paragraphs of CALJIC No. 17.25 did not permit the jury to consider the evidence of the prior convictions before guilt on counts I through IV, or as substantive evidence. The jury was instructed on those issues by that portion of CALJIC No. 17.25 read by the trial court.

Defendant's prior convictions were used in three ways: as an element of count IV, for purposes of enhancement of the minimum sentences as to counts I through III, and for impeachment of defendant's credibility. With regard to the first two uses, the prosecution had the burden of proving the prior convictions beyond a reasonable doubt. (*In re Yurko* (1974) 10 Cal.3d 857, 862-863 [112 Cal.Rptr. 513, 519 P.2d 561].) The failure of the trial court to read the reasonable doubt portion of No. 17.25 as to the use of the 1968 prior conviction in count IV resulted in no error. The jury was properly instructed on reasonable doubt in that regard pursuant to the court's reading of CALJIC No. 2.90 [reasonable doubt relating to substantive crimes charged]. For the purposes of enhancement, any consideration of error is not necessary in light of our overall decision. Upon reversal as to all counts charged, prior convictions as used for enhancement are irrelevant. Moreover, any error resulting would not have been prejudicial. (*People* v. *Louis* (1977) 75 Cal.App.3d 620, 625 [142 Cal.Rptr. 182].) As for the third use, due to defendant's admission on cross-examination that he was the person identified in the exhibits, the prior convictions could properly be used as impeachment. (*People* v. *Carrow* (1929) 207 Cal. 366, 369 [278 P. 857]; *People* v. *Hamm* (1956) 145 Cal.App.2d 242, 244 [302 P.2d 345].) The jury was instructed on the affect of prior convictions as impeachment of credibility. (CALJIC Nos. 2.20, 2.23.)[5] It will be assumed that the trial court will read CALJIC No. 17.25 in its entirety on retrial, if it does occur.

Discussion of defendant's remaining contentions are relevant in case of a retrial in this matter.

### 4. CALJIC No. 4.30 Does Not Adequately Restate the Law Regarding the Burden of Proof on Unconsciousness

█ Unconsciousness due to involuntary intoxication is recognized as a complete defense to a criminal charge. (*People* v. *Heffington* (1973) 32 Cal.App.3d 1, 8 [107 Cal.Rptr. 859].) The prosecution has the burden of

---

[5]Defendant contends that by the court's reading of CALJIC No. 17.25 and No. 2.23, it placed excessive emphasis on the prior convictions. This contention is without merit. (See CALJIC No. 1.01.)

proving beyond a reasonable doubt that a defendant was conscious during the commission of the crime. The prosecution is aided by a presumption to the effect that a defendant who acts as if he is conscious is presumed to be conscious. This presumption is rebuttable. It does not remove from the prosecution the burden of proving a defendant's consciousness beyond a reasonable doubt; it places upon a defendant, when evidence of conscious acts are introduced, "merely the duty of going forward with the evidence and of raising a reasonable doubt." (*People* v. *Hardy* (1948) 33 Cal.2d 52, 64 [198 P.2d 865].)

In the instant case, after instructing the jury that unconsciousness caused by involuntary intoxication is a complete defense (CALJIC No. 4.30), the trial court read CALJIC No. 4.31 (rev. 1972), which reads as follows: "If the evidence establishes beyond a reasonable doubt that at the time of the commission of the alleged offense the defendant acted as if he was conscious, you should find that he was conscious. [¶] However, if, notwithstanding the defendant's appearance of consciousness, the evidence raises a reasonable doubt whether he was in fact conscious, you should find that he was then unconscious."

A former version of No. 4.31 was found to be misleading and confusing in the cases of *People* v. *Williams* (1971) 22 Cal.App.3d 34, 55-57 [99 Cal.Rptr. 103] and *People* v. *Maxey* (1972) 28 Cal.App.3d 190, 199-200 [104 Cal.Rptr. 466]. The former version of No. 4.31 is identical to the instruction read in the instant case, except the former version did not contain the phrase, "notwithstanding the defendant's appearance of consciousness." The phrase was added in a 1972 revision of the instruction. Defendant contends that the 1972 revision of No. 4.31 did not cure the defects in the instruction.

Referring to the former version, the court in *Maxey*, stated: "The first paragraph of the instruction, *standing alone,* would require the jury to find a defendant conscious, if they were convinced beyond a reasonable doubt that he acted *as if he were conscious.* Thus, the jury would be precluded from finding a defendant unconscious in a case where his *overt acts* were those of a conscious person and regardless of any expert testimony or other evidence of unconsciousness. The second paragraph of the instruction, however, properly concludes that '. . . if the evidence raises a reasonable doubt that he was in fact conscious, you should find [that] he was unconscious.' Although the second paragraph is somewhat saving, we nevertheless agree with the court in *Williams,* at page 55, that the first paragraph is misleading and that the total instruction is confusing at the very least." (28 Cal.App.3d at p. 200. Italics in original.)

The court in *Williams,* citing *People* v. *Hardy, supra,* stated that: "[the trial court] should have composed an instruction that informed the jurors that if they found beyond a reasonable doubt that defendant acted as if he were conscious, a rebuttable presumption arose that he was conscious, as to which defendant had the burden of raising a reasonable doubt." (22 Cal.App.3d at p. 57.) As revised, No. 4.31 fails to do this. The instruction still does not clearly inform the jury of the respective burdens of prosecution and defendant. No. 4.31 does not adequately instruct the jury of the operation of the rebuttable presumption as it relates to reasonable doubt on the issue of acts that demonstrate consciousness. The addition of the phrase "notwithstanding the defendant's appearance of consciousness" does not cure this defect. It was error for the trial court to give CALJIC No. 4.31. If retrial does occur, an instruction on the burden of proof on the defense of unconsciousness should be drafted in accordance with the views expressed herein.

5. ▮▮▮ MULTIPLE PUNISHMENT: PURSUANT TO SECTION 654, DEFENDANT'S POSSESSION OF A CONCEALABLE HANDGUN, UNDER THE FACTS OF THE CASE, CONSTITUTES ONE TRANSACTION FOR WHICH DEFENDANT CANNOT BE PUNISHED UNDER BOTH SECTIONS 12021 AND 245

Defendant was convicted in counts I through III for assault with a deadly weapon (§ 245) and in count IV for possession of a concealable firearm by a former felon (§ 12021). At oral pronouncement of judgment,[6] the trial court committed defendant to state prison on count IV and ordered the sentence on that count to run consecutively with the sentences imposed on counts I through III. Based on section 654, defendant asserts that he cannot be punished for possession of the handgun used in the shootings under both sections 245 and 12021.

Section 654 provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one."

▮▮▮ The standard for applying section 654, where one of the convictions suffered by a defendant was a violation of section 12021 was

---

[6]The clerk's minute order of the sentencing proceeding does not mention count IV. Statements made by the court at oral pronouncement prevail over the clerk's record for purposes of determining the actual sentence imposed. (*People* v. *Hartsell* (1973) 34 Cal.App.3d 8, 13 [109 Cal.Rptr. 627].) Further, the parties are in agreement as to the sentence orally imposed.

established in *People* v. *Venegas* (1970) 10 Cal.App.3d 814, 821 [89 Cal.Rptr. 103]: "Whether a violation of section 12021, forbidding persons convicted of felonies from possessing firearms concealable upon the person, constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. [Citation.] Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. [Citations.] On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense. [Citations.]"

■ The prosecution failed to prove that defendant's possession of the handgun was "antecedent and separate" from his use in the assaults. The People impliedly concede this point on appeal. Instead, the People contend that defendant's possession of the handgun during his flight from the scene of the shootings removes him from the application of section 654. However, defendant's possession during flight was only incidental to the primary objective, the assaults. As summarized in *People* v. *Jurado* (1972) 25 Cal.App.3d 1027, 1033 [102 Cal.Rptr. 498], "the modern rule [is] that a defendant may not be punished both for possession of a weapon and for another offense in which the weapon is used, where the evidence does not show possession for any other purpose." Accordingly, if upon retrial, the same evidence is introduced relating to this point and defendant is convicted of any or all counts of assault and of a count of possession of a concealable firearm, he may be punished only for the more serious offense, but not both offenses.

6. ■ DEFENDANT'S 1968 CONVICTION CAN SERVE TO ENHANCE THE MINIMUM SENTENCE IMPOSED ON CONVICTIONS OF ASSAULT WITH A DEADLY WEAPON, NOTWITHSTANDING ITS USE AS AN ELEMENT IN A COUNT FOR POSSESSING A CONCEALABLE FIREARM BY A FORMER FELON

Citing *People* v. *Edwards* (1976) 18 Cal.3d 796, 800 [135 Cal.Rptr. 411, 557 P.2d 995], defendant asserts that his 1968 prior conviction, if used as an element in a count for possessing a concealable firearm by a former felon, cannot then be used to enhance the minimum sentence on an assault with a deadly weapon count. We disagree. All that *Edwards* stands for is the proposition that a prior conviction which constitutes an element of an offense which would not otherwise be criminal (example—§ 12021) cannot be used to enhance the minimum of *that* offense. The rule in

*Edwards* does not bar enhancement by the use of prior convictions for offenses which do not have as an element the prior conviction. Thus, in a retrial, if it does occur, defendant's 1968 prior conviction could be used to enhance the minimum sentences on the assault charges notwithstanding its use as an element in a possession of a concealable firearm count. *Edwards* would preclude the enhancement of concealable firearm count due to the proof of the 1968 prior conviction.

The combination of errors in the instant case requires reversal of defendant's conviction. If a retrial is ordered, the proceedings therein shall conform to the views expressed in this opinion.

Reversed.

**KAUS, P. J.**—I reluctantly concur. While I do not agree with all the alleged deficiencies in the trial court procedures relating to the appointment and relief of counsel and the ultimate decision to permit defendant to represent himself, it does seem to me that the trial court erred somewhere along the line. If I had to put my finger on the turning point, it came on October 22, 1976, when defendant announced, "I cannot and do not accept Public Defender as counsel. . . ." When the court failed to initiate a *Marsden* type of inquiry at that point, the game was pretty well lost.

I purposely refer to the proceedings as a "game" because I am not blind to what is going on: defendants are manipulating the system to their advantage, basing various ploys and gambits on real or imagined contradictions in applicable Supreme Court opinions. The Stephen Potter who can write a manual to counter all these moves has not yet appeared on the scene.

Finally, even if CALJIC No. 4.31 is not fatally defective, it is confusing and contradictory and should not be given to the jury on a retrial of this case.

Ashby, J., concurred.