[Crim. No. 36682. Second Dist., Div. Five. Dec. 9, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT E. McCLINDON, Defendant and Appellant.

## COUNSEL

Mark E. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—Appellant was charged by information with two counts of violation of Penal Code section 245, subdivision (a), and one count of being a convicted felon in possession of a concealable weapon in violation of Penal Code section 12021.[1] A mistrial was declared as to the first two counts, but appellant was found guilty of violating Penal Code section 12021. Appellant was sentenced to the upper term of three years in state prison. He appeals both the judgment and the sentence.

---

[1] Penal Code section 12021, subdivision (a), states: "Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, or who is addicted to the use of any narcotic drug,

## STATEMENT OF FACTS

On June 12, 1979, Javier Sykes (Jay), aged 10, and Anthony Lewis (Tony), aged 7, were playing ball in the courtyard of their apartment building from approximately 5 p.m. to 8 or 8:30 p.m. A ball was lost when Tony threw it over the roof of the apartment building. The boys did not look for that ball because they were "scared" of "that man [appellant]." It was still light out at that time.

The boys continued to play ball. After dark Tony again threw the ball over the roof toward appellant's house. This time the boys went looking for it.

The two went through a gate to the back of the apartments, to a fence which divides the apartment complex from appellant's house. They found their ball next to some gas meters. Upon retrieving it they then walked up to a chain link gate and Jay began to climb over it first.

At about this time appellant and his wife were awakened by noise outside and at their bedroom window; appellant's wife became hysterical. Appellant testified that he shouted out, "What in the devil is going on out there?" He then picked up a pistol that he kept in a nightstand, pulled up the curtain and waited "a short, very short second" then fired three shots until he heard no further noise.

## DISCUSSION

■ Appellant contends that the trial court committed reversible error when it refused to give the jury an instruction on self-defense to the violation of Penal Code section 12021. This contention has no merit.

Essentially, appellant attempts to come within the authority of *People* v. *King* (1978) 22 Cal.3d 12 [148 Cal.Rptr. 409, 582 P.2d 1000], which holds that under certain circumstances self-defense may negate an apparent violation of section 12021. In *King* the defendant was a guest at a party. During a violent altercation with a group of party crashers who were kicking and pounding on the front door and threat-

who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison or in a county jail not exceeding one year or by a fine not exceeding five hundred dollars ($500), or by both."

ening to break it down, defendant was handed a .25 caliber pistol which he fired in an attempt to frighten the intruders. The court held, "Inasmuch as defendant's brief use of a concealable firearm, without predesign or prior possession of the weapon, in the exercise of the right to self-defense, defense of others, or defense of habitation would not constitute the possession, custody, or control of the firearm which the Legislature has prohibited in section 12021, it was error for the court to fail to instruct the jury regarding the relevance of these defenses to the 12021 charge." (*Id.*, at pp. 26-27.)

Key points are that possession of a concealable firearm be brief and without predesign or prior possession. *King* clearly is not applicable here. Appellant's possession of the pistol was admittedly not brief and further it was not without design or prior possession. Appellant admitted that he had possession of the firearm for approximately five months and that he kept it by his bed for protection because he did not want to shoot anybody with his rifle.[2]

Appellant's conduct does not come within the facts of *People* v. *King, supra.* The trial court was not required to give an instruction that had no foundation in the evidence. (*People* v. *Brunt* (1972) 24 Cal.App.3d 945, 955-956 [101 Cal.Rptr. 457]; *People* v. *Rollo* (1977) 20 Cal.3d 109, 122-123 [141 Cal.Rptr. 177, 569 P.2d 771].)

---

[2]Counsel for appellant asked appellant why he had placed the pistol he had kept by the bed and the purpose for it. Appellant testified as follows: "A. I thought it would be handy for me. I was going to keep it. I started to put my own back there, but I thought about the law, you know, and having a gun like that in my possession.

" . . . . . . . . . . .

"Q. What was the main purpose of keeping that gun on that...

"A. I was keeping it because I already had—Margaret, she had one gun. I didn't want to use that gun, that pistol, by any means because she had it. [¶] I wanted that gun that side because I didn't have a small gun, and I just laid it over there so if anything ever came up I would have a gun close by. I didn't want to shoot nobody with no rifle.

"Q. What do you mean 'I didn't want to shoot nobody'?

"A. People in that neighborhood breaking in people's house and stealing.

" . . . . . . . . . . . .

"Q. [resumed direct examination] I think the last question I asked you, Mr. McClindon, was why did you keep the gun on your nightstand by the bed in the bedroom?

"A. I kept it because I was afraid, I needed something to help me along in case if I got into a position I couldn't—I couldn't do nothing else but use it the best way I could.

"Q. Thank you, sir, and is that also the reason that you kept your telephone on your bed?

"A. Yes."

■ Appellant next contends the trial court committed reversible error in denying a motion by appellant based upon *People v. Sherren* (1979) 89 Cal.App.3d 752 [152 Cal.Rptr. 828]. *Sherren* held that a defendant charged with violation of section 12021 may stipulate to his conviction of a felony and request that the jury be instructed in such manner that the jury is not informed of the defendant's prior record or that conviction of a felony is an element of the offense charged.

At the time of this trial *Sherren* was contrary to the weight of authority but the issue was then pending in the state Supreme Court in *People v. Hall*, Crim. 21070. Subsequent to the instant trial the Supreme Court decided *Hall*, and approved the *Sherren* case. (*People v. Hall* (1980) 28 Cal.3d 143, 152-158 [167 Cal.Rptr. 844, 616 P.2d 826].)

However, *Sherren* error is subject to the *Watson*[3] standard of harmless error. In fact, in both *Hall* and *Sherren* the trial court's error in submitting to the jury the issue of the defendant's prior conviction was held nonprejudicial. (*People v. Hall, supra*, at pp. 157-158; *People v. Sherren, supra*, at pp. 761-762.) Applying this standard to the instant case, it is clear there was no miscarriage of justice and that reversal is not required. Appellant's possession of the firearm was undisputed. That appellant possessed the gun, and had possessed it in his bedroom for several months, was shown by his own testimony. The fact that the jury was informed appellant was a convicted felon had no prejudicial impact in light of the undisputed evidence that appellant possessed the firearm.

■ In a related argument appellant contends his trial counsel was incompetent in failing to raise the *Sherren* issue in a timely manner, prior to the reading of the information to the jury. However, even assuming that this was a mistake by counsel reflecting incompetence, it did not result in the withdrawal of a crucial or potentially meritorious defense. (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) In view of our conclusion that the jury's being aware of appellant's status could have had no prejudicial impact in light of the undisputed evidence of possession, any alleged error in failing to raise the *Sherren* issue sooner was harmless beyond a reasonable doubt. (See *People v. Cooper* (1979) 94 Cal.App.3d 672, 683 [156 Cal.Rptr. 646]; *People v. Dorsey* (1975) 46 Cal.App.3d 706, 720 [120 Cal.Rptr. 508].)

---

[3]*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

■ Lastly, appellant contends that in sentencing appellant to the upper term the court improperly considered appellant's prior convictions as circumstances in aggravation under California Rules of Court, rule 421.

The record does not indicate that the court based its decision to sentence appellant to an upper term on appellant's prior convictions. Rather the record shows the court's comments on appellant's prior convictions were merely preliminary, in the context of the court's discussion of the purposes behind Penal Code section 12021.

Appellant's contentions regarding improper consideration of aggravating circumstances are two: first, that Penal Code section 12021 is a victimless crime and, by definition, cannot have aggravating circumstances and, second, that consideration of aggravating circumstances under the present facts is in direct contravention to the rule that a party may not be punished both for possession of a weapon and for an offense in which that weapon is used. Both arguments are without merit.

A court may consider the circumstances surrounding the violation of Penal Code section 12021. (*People* v. *Betterton* (1979) 93 Cal.App.3d 406, 415 [155 Cal.Rptr. 537]; see also *People* v. *Cheatham* (1979) 23 Cal.3d 829, 835 [153 Cal.Rptr. 585, 591 P.2d 1237].)

Appellant's reliance on *People* v. *Cruz* (1978) 83 Cal.App.3d 308 [147 Cal.Rptr. 740], to contradict this position is inappropriate. In *People* v. *Cruz, supra,* the defendant was convicted of more than one violation arising from a single course of conduct, prohibited by Penal Code section 654. In the present case, although appellant was charged with several offenses, he was convicted of one count of violation of Penal Code section 12021. Furthermore, unlike the present case, the prosecution in *People* v. *Cruz, supra,* was unable to prove that possession of the weapon was antecedent and separate from use in the alleged assaults. (*Id.,* at p. 333.)

The record shows that appellant possessed the firearm in such a reckless manner that he caused another great bodily harm,[4] that the victims were particularly vulnerable and that there were multiple victims. Such

---

[4]One of the bullets struck Tony in the head, resulting in permanent disability.

factors were properly considered circumstances in aggravation of the crime of violating Penal Code section 12021, and under the facts of this case such consideration is not violative of Penal Code section 654.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.