Filed 5/15/13  P. v. Behbahani CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MOHAMMAD BEHBAHANI, <br><br> Defendant and Appellant. | D059705 <br><br><br><br> (Super. Ct. No. SCD223358) |


APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed as modified.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

In a second trial, a jury convicted Mohammad Behbahani of the unlawful possession of an assault weapon (former Pen. Code, § 12280, subd. (b)). The imposition of sentence was suspended pending his successful completion of 18 months of formal probation.

On appeal, Behbahani contends the trial court erred by granting his motion under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta* motion) to represent himself, without first conducting a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden* motion) to determine why he was dissatisfied with his appointed counsel, and whether new counsel should be appointed, and by conditioning his right of self-representation on no continuance of trial. Further, he challenges a probation condition requiring the probation officer's approval of his choice of residence and employment as overbroad and unconstitutional. We agree with the latter point and modify the probation order to strike these particular conditions. In all other respects, we affirm the judgment.

FACTS

On October 8, 2009, Detective Jethro Hudgins of the San Diego Police Department, with a team of police officers and investigators, went to a residence in the Scripps Ranch area of San Diego to conduct a welfare check. Behbahani came out of the house, and after a brief discussion, he invited Hudgins and others into the house. Detective Hudgins asked Behbahani if there were guns in the house. Behbahani said there were four guns present. Behbahani showed Detective Hudgins the guns, including a rifle in a zippered case, which Behbahani referred to as an AK-47, along with two

2

loaded magazines. Behbahani produced a receipt for the rifle, which was actually a Norinco MAK-90, a semiautomatic rifle.

DISCUSSON

I

*Validity of Behbahani's Waiver of Right to Counsel*

A

Behbahani contends the trial court committed reversible error by granting his *Faretta* motion without first conducting a *Marsden* hearing to give him a meaningful opportunity to specifically explain why he was dissatisfied with his appointed counsel, and determining whether he would rather have new appointed counsel than self-representation. We find the contention unconvincing.

" 'A defendant in a criminal case possesses two constitutional rights with respect to representation that are mutually exclusive.' [Citation.] '[T]he Sixth Amendment guarantees a defendant a right to counsel but also allows him to waive this right and to represent himself without counsel.' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 545.) "In *Faretta,* the United States Supreme Court declared that a defendant 'must be free personally to decide whether in his particular case counsel is to his advantage,' even though 'he may conduct his own defense ultimately to his own detriment . . . .' [Citation.] Thus, a state may not 'constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense.' " (*People v. James* (2011) 202 Cal.App.4th 323, 329.)

"A criminal defendant may not waive his right to counsel, however, 'unless he does so "competently and intelligently," [citations].' [Citation.] 'The right to representation by counsel persists until a defendant affirmatively waives it, and courts indulge every reasonable inference against such waiver.' [Citation.] '[T]he waiver of counsel must be *knowing and voluntary*—that is, the defendant must "actually . . . understand the significance and consequences" of the decision, and the decision must be "uncoerced" [citations].' " (*People v. Sullivan, supra,* 151 Cal.App.4th at p. 545.)

" ' "When confronted with a request" for self-representation, "a trial court must make the defendant 'aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." ' [Citation.] . . . " [Citation.]' [Citations.] 'In order to deem a defendant's *Faretta* waiver knowing and intelligent,' the trial court 'must insure that he understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the "dangers and disadvantages of self-representation." [Citation.]' [Citation.] The admonishments must also 'include the defendant's inability to rely upon the trial court to give personal instruction on courtroom procedure or to provide the assistance that otherwise would have been rendered by counsel. . . . .' [Citation.]" (*People v. Sullivan*, *supra*, 151 Cal.App.4th at pp. 545-546.)

" 'A defendant may challenge the grant of a motion for self-representation on the basis the record fails to show the defendant was made aware of the risks of self-representation.' [Citation.] ' "Whether there has been a waiver is a question of fact." [Citation.]' [Citations.] *The burden is on the defendant* to demonstrate he did not

4

knowingly and intelligently waive his right to counsel.' [Citations.] On appeal, the courts 'review the entire record—including proceedings after the purported invocation of the right of self-representation—and determine de novo whether the defendant's invocation was knowing and voluntary.' " (*People v. Sullivan, supra,* 151 Cal.App.4th at pp. 546-547.)

The following procedural background is relevant. At his arraignment on October 19, 2009, Behbahani appeared with retained counsel and pleaded not guilty to the weapon charge. On February 3, 2010, Behbahani requested to represent himself. The court asked Behbahani if he wanted to obtain new counsel, and he initially said no. He then said he was "just fed up with his lawyer." The court advised Behbahani that in its view he would be better off with an attorney. It offered to continue the preliminary hearing to March 15, 2010, to give him time to retain another attorney, and he accepted the offer.

On March 15, 2010, the court called the Behbahani matter, and he was not present. His retained attorney explained Behbahani had fired him, and the court relieved him as attorney of record. Behbahani showed up late and requested appointed counsel, and the court granted the request. On March 18, 2010, the court appointed a public defender for Behbahani.

At a readiness conference on October 26, 2010, Behbahani again requested to represent himself. He presented the court with a *Lopez* waiver,[1] but he had not initialed the paragraph acknowledging a maximum prison term of three years. He advised the court he was not prepared to initial that paragraph, and the court denied his request because he had not given "an unambiguous complete waiver."

On December 9, 2010, the first day of trial, Behbahani again requested to represent himself. The court denied the request. The jury was unable to reach a unanimous verdict (11 to 1 for conviction) and on December 16, 2010, the court declared a mistrial.

On December 22, 2010, Deputy Public Defender Michael Ruiz represented Behbahani at a scheduling hearing. The court set a readiness conference for February 23, 2011, and trial for March 2, 2011.

At the readiness conference, Behbahani again requested to represent himself. He advised the court he had signed a *Lopez* waiver. The court noted, "We are one week from the trial date," and his appointed counsel responded, "Mr. Behbahani is well aware of that. He's prepared to go to trial next week." Behbahani stated, "The lawyer is not willing to tell the truth, and I want to tell the truth." The following colloquy then took place:

---

[1] "In *People v. Lopez* (1977) 71 Cal.App.3d 568, 571 . . . , the court suggested a set of advisements 'designed to ensure a clear record of a defendant's knowing and voluntary waiver of counsel.' " (*People v. Goodwillie* (2007) 147 Cal.App.4th 695, 705, fn. 5.)

"THE COURT: Mr. Behbahani, I'm handed this form. It's a form called Acknowledgment Regarding Self-Representation and Waiver of Right to Counsel. We sometimes call it a *Faretta* or *Lopez* waiver. It appears to bear some initials in all but one box, and it appears to bear your signature. Did you read this form?

"THE DEFENDANT: Yes.

"THE COURT: Did you understand everything in it?

"THE DEFENDANT: Yes.

"THE COURT: Did you sign it?

"THE DEFENDANT: Yes.

"THE COURT: This form tells you the following—It tells me, in fact, that you wish to exercise your constitutional right to represent yourself without the help of a lawyer. Is that what you're asking to do?

"THE DEFENDANT: Yes. The lawyer is not willing to tell the truth, and I want to tell the truth.

"THE COURT: Well, my question is, regardless of your reason, you're telling me clearly and unequivocally that you want to represent yourself; is that correct?

"THE DEFENDANT: In that circumstances, yes.

"THE COURT: Don't tell me about that circumstance. Do you want a lawyer or do you want to represent yourself?

"THE DEFENDANT: I want to represent myself.

"THE COURT: Thank you. You understand that you have the right to an appointed lawyer, and in fact you have one right now. You understand you have the right to a lawyer?

"THE DEFENDANT: Yes.

"THE COURT: By representing yourself, you give up that right?

7

"THE DEFENDANT: Yes.

"THE COURT: You're charged in this case with one count of violation of . . . Section 12280(b). This is sometimes called possession of an assault weapon. It is a felony. It carries a maximum penalty of three years in state prison, a fine of $20,000, and a period of parole that could last as long as four years. Do you understand that?

"THE DEFENDANT: No.

"THE COURT: What don't you understand about that?

"THE DEFENDANT: Is California Penal Code for the first time I sold the weapons if I'm convicted I'm going to be on probation $500 fine?

"THE COURT: That is not correct. If you are convicted, a judge may send you to state prison for three years. Do you understand this?

"THE DEFENDANT: I don't know that's the law you're saying—

"THE COURT: Do you understand that I am telling you that the law is that if you get convicted, a judge may send you to state prison for 16 months, two years, or three years? Do you understand that that is what I'm telling you?

"THE DEFENDANT: I'm not sure. The way you're explaining, maybe that is.

"THE COURT: Well, let's put it this way. One of the risks that you are taking, sir, by representing yourself, is that if you are found guilty and if a judge thinks it is appropriate, a judge can send you to prison for three years. The risk is that you are taking is that every judge in this courthouse is going to read the law the same way I'm reading it and will be saying, 'Yes, I can send you to prison for three years if you are convicted.' Do you understand that is the risk that you are taking?

"THE DEFENDANT: I've been told.

"THE COURT: You understand that, yes?

8

"THE DEFENDANT:  Yes."

Further questioning revealed that Behbahani holds a Ph.D., in nuclear engineering, he is a business owner, and he is literate in English.  Additionally, the court warned Behbahani about the dangers of self-representation, as follows:  "Do you understand that it is almost always unwise for you to represent yourself, for any person to represent himself, and most people who represent themselves end up conducting their cases in a way that turns out to be harmful to their interests.  Do you understand that?"  Behbahani responded, "I understand what you're saying.  It's a very bad choice, but I have no other choice."

The court proceeded to advise Behbahani it would not give him any legal advice or special treatment just because he was representing himself, and it would hold him to the same standards as an attorney.  Further, the court explained "the prosecutor may be represented by a very experienced and skilled lawyer[,] [s]o it would be like you getting in the ring with Mike Tyson."  Behbahani said he understood.

Behbahani does not challenge the sufficiency of the court's advisements during the *Faretta* motion.  Rather, he asserts his responses to the court's questioning—that "[t]he lawyer is not willing to tell the truth, and I want to tell the truth," and that self-representation was "a very bad choice, but I have no other choice," put the court on "notice that [he] believed the only way he could present the jury with the truth was to have substitute counsel, and his only option was self-representation."  In Behbahani's view, his comments triggered the court's duty "to conduct a *Marsden* hearing, and the court's failure to inquire led to [his] ineffectual waiver of his right to appointed counsel."

9

"When a criminal defendant seeks *substitution of counsel* on the ground that appointed counsel is providing inadequate representation, a trial court must give the defendant an opportunity to explain the reasons for the request. [Citations.] Although no formal motion is necessary, there must be 'at least some clear indication by defendant that he wants a substitute attorney.' " (*People v. Mendoza* (2000) 24 Cal.4th 130, 156-157, italics added, citing *Marsden, supra,* 2 Cal.3d at pp. 123-125; *People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8.) "[T]he trial court's duty of inquiry is triggered only when the nature and degree of defendant's dissatisfaction amounts to an '[assertion] directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel.' " (*People v. Cruz* (1978) 83 Cal.App.3d 308, 316 (*Cruz*).)

We disagree that Behbahani's statements constituted a clear indication he wanted substitute counsel, or that he was accusing his appointed attorney of ineffective assistance. Ordinarily, a "request for self-representation does not trigger a duty to conduct a *Marsden* inquiry [citation] or to suggest substitution of counsel as an alternative." (*People v. Crandall* (1988) 46 Cal.3d 833, 854-855.) "Requests under both *Marsden* and *Faretta* must be clear and unequivocal; the one does not imply the other." (*People v. Rivers* (1993) 20 Cal.App.4th 1040, 1051, fn. 7.)

Moreover, Behbahani would have been aware of his right to substitute counsel, because he had previously brought a *Faretta* motion, in which he agreed with the trial court's assessment that he would be better off with counsel, and he accepted the court's offer to continue the matter for three weeks so he could obtain new counsel. He

10

ultimately replaced his retained attorney with a court-appointed attorney rather than opting for self-representation. Behbahani could have sought another substitution, but he chose not to. We conclude the court had no duty to conduct a *Marsden* hearing.

Behbahani submits that *Cruz*, *supra*, 83 Cal.App.3d 308, is directly on point and shows he did not effectively waive his right to counsel. In *Cruz*, the defendant's appointed counsel advised the court he wanted to represent himself because he had "a general conflict of interest with the public defender's office." (*Id.* at p. 316.) The defendant responded, "In the past I have been represented by the public defender's office and each and every time the record will show there's never been any investigation into the cases I've had, there's been nothing as far as anything I've asked them to do, certain things and they said, no, there is no such thing. And we just got a definite conflict. [¶] I wrote a letter to the public defender's office and I got a letter back stating, well, that I shouldn't . . . look to them for any more assistance and so forth." (*Id.* at p. 317.) At the continued hearing, the defendant stated, " 'Because of what has taken place since this [*sic*] proceedings in this matter started, beginning in Municipal Court, I cannot and do not accept Public Defender as counsel.' " (*Ibid.*)

The appellate court held the trial court should have inquired further into the defendant's claims before allowing him to represent himself, explaining the record indicated the defendant's request for self-representation "was based on a lack of viable alternatives." (*Cruz*, *supra*, 83 Cal.App.4th at p. 318.) *Cruz* is unhelpful, because there is no suggestion Behbahani had any system-wide conflict with the public defender's office or that believed he lacked access to another competent appointed counsel.

11

This case is more akin to *People v. Mendoza* (2000) 24 Cal.4th 130, in which the defendant sought to represent himself for the stated reasons, "I feel I'm not getting a defense," "I don't know anything about my case," and "I haven't had a chance to" speak to appointed counsel. (*Id.* at pp. 155-156.) Our high court rejected the defendant's contention a *Marsden* inquiry was necessary based on these "fleeting reference[s] to dissatisfaction with counsel." (*Id.* at p. 157.) The court explained, "Given defendant's insistence on self-representation, the trial court was under no obligation to conduct an inquiry into any dissatisfaction defendant might have with his appointed counsel so as to necessitate substitution of counsel." (*Id.* at p. 157.) We arrive at the same conclusion here.

B

Alternately, Behbahani contends reversal is required because the court conditioned its grant of his *Faretta* motion on his foregoing a continuance of trial. Again, we disagree.

"[T]o invoke an *unconditional* right of self-representation, the defendant must assert the right 'within a reasonable time prior to the commencement of trial.' [Citations.] A motion made after this period is addressed to the sound discretion of the trial court. [Citations.] [¶] The 'reasonable time' requirement is intended to prevent the defendant from misusing the motion to unjustifiably delay trial or obstruct the orderly administration of justice. 'For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of

12

the request. . . . .' [Citations.]"  (*People v. Burton* (1989) 48 Cal.3d 843, 852-853, italics added; *People v. Howze* (2001) 85 Cal.App.4th 1380, 1397 [motion made three days before trial held untimely].)

In *People v. Clark* (1992) 3 Cal.4th 41, 110, the court explained, "Although a necessary continuance must be granted if a motion for self-representation is granted, it is also established that a midtrial *Faretta* motion may be denied on the ground that delay or a continuance would be required."  Given the proximity of trial, a court may "deny [a] *Faretta* motion as untimely if a continuance would be necessary," and it may also grant a *Faretta* motion that would otherwise be untimely "when defendant expressly represented he was able to proceed without a continuance."  (*Ibid.*; *People v. Tyner* (1977) 76 Cal.App.3d 352, 355 [court may find *Faretta* motion near the time of trial is timely when it is *unaccompanied* by a continuance request]; accord, *In re Justin L.* (1987) 188 Cal.App.3d 1068, 1076-1077.)

At the beginning of the *Faretta* hearing, appointed counsel represented that Behbahani knew trial was a week away and he would be ready to proceed.  The court asked Behbahani directly if he understood "that we're going to go to trial," and he stated, "I need a little more time."  The court explained, "If you need a continuance or postponement or more time, then I'm not going to let you represent yourself.  If you're ready to go to trial on this date, then if we go through the rest of this [*Lopez* waiver] form, I will" grant your request.  He responded that he would be ready to proceed with trial.  The court questioned him further, and he stated, "I have no choice.  I got to be

13

ready."  The court then asked, "[A]re you going to be ready?  That's a yes or no."  He clarified, "Yes, I'm ready."

Behbahani asserts, "the court was *required* to grant his request for a continuance" because his *Faretta* motion was timely, and thus subject to the liberal rule of continuing the trial to give him additional time to prepare.  When a *Faretta* motion is granted as timely, meaning unconditionally, the defendant is ordinarily "entitled to a reasonable continuance to enable him to prepare for trial.  'To deny him that opportunity would be to render his right to appear in propria persona an empty formality, and in effect deny him the right to counsel.' "  (*People v. Hill* (1983) 148 Cal.App.3d 744, 756.)  "However, if the court determines the defendant's request [for a continuance] is merely a tactic designed to delay the trial, the court has the discretion to deny the continuance and require the defendant to proceed to trial as scheduled either with his counsel or in propria persona."  (*People v. Douglas* (1995) 36 Cal.App.4th 1681, 1689, citing *United States v. Flewitt* (9th Cir. 1989) 874 F.2d 669, 674-675.)  A request for a continuance that accompanies a *Faretta* motion is strong evidence the defendant's purpose is dilatory.  (*People v. Burton* (1989) 48 Cal.3d 843, 854.)

Behbahani relies on *People v. Hill*, *supra*, 148 Cal.App.3d 744, which held that "regardless of whether the grant of the *Faretta* motion was mandatory or discretionary, once the court granted that motion, it was obliged also to grant appellant's request for a continuance."  (*Id.* at p. 757.)  Behbahani, however, expressly represented that he was ready for trial without any continuance.  His fleeting comment at the beginning of the *Faretta* hearing, "I need a little more time," does not constitute a continuance request or

14

assertion of the inability to prepare a defense, in light of his later assurances to the contrary in response to the court's careful questioning intended to clarify his position. The People's attorney asked the court to inquire of Behbahani again, because "maybe it wasn't sufficiently clear to me that [he] is ready and prepared to go on the trial date as set. It seemed like he was just saying he's not but he'll do it anyway." The court did so, and he cannot now reasonably claim it should have known he needed a continuance. Further, he points to nothing in the record to support his assertion that at the time of the *Faretta* hearing he was unprepared to go to trial.[2] Thus, the court's granting of the *Faretta* motion without a continuance was proper.

## II

### *Probation Conditions*

Additionally, Behbahani contends probation conditions requiring him to obtain his probation officer's approval of his residence and employment are overbroad because they infringe on his constitutional rights of freedom to travel and freedom of association. We review constitutional challenges to probation conditions de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

---

[2] On the first day of trial, Behbahani requested a continuance to subpoena unspecified witnesses to support the argument police officers conducted a warrantless search of his home. The court explained a continuance was unnecessary for that purpose because a suppression motion was untimely. Contrary to his position, the request for a continuance at trial does not show he also requested a continuance during the *Faretta* motion. He did not argue at the *Faretta* motion that he needed time to subpoena any witnesses or perform any other task. The People's case consisted of only two witnesses, Detective Hudgins and a firearms expert. Behbahani's appointed counsel represented to the court at the *Faretta* motion he had given Behbahani a copy of all the discovery and a copy of the preliminary hearing transcript.

"Trial courts have broad discretion to set conditions of probation in order to 'foster rehabilitation and to protect public safety pursuant to . . . section 1203.1.' [Citations.] If it serves these dual purposes, a probation condition may impinge upon a constitutional right otherwise enjoyed by the probationer, who is 'not entitled to the same degree of constitutional protection as other citizens.' [Citation.] [¶] However, the trial court's discretion in setting the conditions of probation is not unbounded. A term of probation is invalid if it: ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' [Citation.] Conversely, '. . . a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.' " (*People v. Lopez* (1998) 66 Cal.App.4th 615, 624.)

We agree that nothing in the record indicates Behbahani's living situation contributed to his crime or future criminality. We disagree with the People's assertion that since Behbahani possessed an illegal gun in his home (as opposed to in his vehicle or workplace), there is a sufficient relationship to justify the probation officer's absolute authority to approve his residence. The probation report states Behbahani owned a home and had lived there for about 24 years, and there is no suggestion he intended to move. While the probation officer presumably would not act capriciously, that alone does not permit the court to unnecessarily limit his rights. Similarly, we agree the employment condition is unrelated to his crime or future criminality. We note that the "Order

16

Granting Probation" form lists the residence and employment conditions in the section titled "VIOLENCE AND SEX CONDITIONS," which does not apply here.

Behbahani does not challenge other probation conditions, which for instance prohibit him from knowingly owning or possessing any firearm or other weapon, and from knowingly associating with any persons with firearms or other weapons in their possession. Further, he is required to notify his probation officer of any change of residence or employment within 72 hours.

## DISPOSITION

The probation conditions requiring the probation officer's approval of Behbahani's residence and employment are stricken. In all other respects, the judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

McINTYRE, J.

17