Filed 8/29/14  In re S.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| In re S.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E059479 |
| Plaintiff and Respondent, | (Super.Ct.No. J248217) |
| v. | OPINION |
| S.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed with directions.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant S.G. (minor) challenges the juvenile court's denial of his motion to suppress evidence (Welf. & Inst. Code, § 700.1)[1] and two of the conditions of his informal probation. Minor's probation resulted from a true finding that he committed misdemeanor graffiti vandalism or "tagging." (Pen. Code, § 594, subd. (b).) As discussed below, we affirm the judgment but direct that the two probation conditions be modified as specified in the "Disposition" portion of this opinion.

## FACTS AND PROCEDURE

On November 24, 2012, Fontana Police Officer Coillot and his partner stopped at a convenience store to get a drink. As they were outside the store talking, they observed minor leaving the store. Minor was wearing a backpack with what appeared to be graffiti written on it. As minor walked out of the store, Officer Coillot said something to minor like, "what's up" and asked what was written on his backpack. Minor replied, "'Resto.'" Officer Coillot then asked minor if he was a tagger, to which minor responded, "I used to tag." At that point, the officer detained minor by asking him to sit down on the curb.

Officer Coillot entered the name "Resto" into a graffiti tracking website on his smart phone. Within two minutes, the officer pulled up four digital photographs of graffiti within the last year containing the name "Resto." Officer Coillot showed the photographs to minor, who admitted that two of the photographs "were his."

---

[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.

The officer and his partner then arrested minor and took him to the police station. After being advised of his *Miranda*[2] rights, minor again admitted to having committed the two instances of graffiti.  Minor was issued a citation for felony vandalism over $400 (Pen. Code, § 594, subd. (b)(1)) and was released to his father.

On February 27, 2013, the People filed a section 602 petition alleging minor committed one count of felony vandalism.

On April 16, 2013, minor filed a motion to suppress evidence on the ground that he was illegally detained.  The juvenile court heard the motion on April 24, 2013.  After hearing testimony from Officer Coillot and argument from the parties, the court denied the motion.

On July 16, 2013, the court reduced the allegation to a misdemeanor and minor admitted the allegation.

At the dispositional hearing held on August 13, 2013, the court placed minor on informal probation in the custody of his parents.  The court ordered minor to pay restitution of $976.26.

This appeal followed.

## DISCUSSION

1.    *The Motion to Suppress was Properly Denied*

Minor argues police lacked reasonable suspicion to detain him in front of the convenience store and therefore his admission to two acts of graffiti made during the

---

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436.

3

detention should have been suppressed. He further argues that his later admission at the police station was derived directly from the illegal detention, and so also should have been suppressed. As discussed below, police pointed to specific articulable facts raising a reasonable suspicion that minor might have committed graffiti vandalism, and so the juvenile court correctly denied minor's motion to suppress. Thus, we need not address minor's argument regarding the in-custody admission.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

In determining whether a detention is legal, reviewing courts consider the totality of the circumstances. (*People v. Souza* (1994) 9 Cal.4th 224, 230-231.) "'[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question.'" (*People v. Loewen* (1983) 35 Cal.3d 117, 123.)

4

The full array of specific and articulable facts that, considered together and based on his experience and training, caused Officer Coillot to detain minor are the following: (1) the officer observed that minor had graffiti-style writing on his backpack; (2) minor responded to the officer's pre-detention question that the writing on his backpack said "Resto"; (3) minor responded that he "used to tag" to the officer's pre-detention question about whether he was a tagger; and (4) minor was in a high-crime area known for graffiti vandalism.

The facts we find most persuasive and which, from Officer Coillot's testimony, appear key to the formation of his reasonable suspicion that minor might be involved in criminal activity, are that minor had what appeared to be a graffiti moniker written on his backpack and that he admitted that he "used to tag." Officer Coillot was the officer in the Fontana Police Department's gang unit designated as the graffiti vandalism officer. Before taking over from the prior graffiti vandalism officer the previous year, Officer Coillot received two hours of formal instruction on graffiti and conducted two weeks of field training with his predecessor. In addition, at the time of the suppression hearing, Officer Coillot had investigated approximately 500 instances of tagging and had made approximately 25 arrests for the crime of graffiti vandalism.

Officer Coillot testified that, in his training and experience, tagging is all about fame and getting attention from other taggers. The more times a tagger tags, the more fame he or she achieves. When asked why a tagger would tag his own property, Officer Coillot testified that, "They want to show other taggers who they are. So that if another tagger sees them, they can say, hey, I've seen your [tags.] It's just another time where

5

they can be a walking billboard they can show other taggers who they are. And it gets them fame. It gets them attention from other taggers." This background information, combined with minor's statements that the graffiti on his backpack spelled "Resto," and he admitted that he "used to tag," are all more than enough to justify a reasonable suspicion that he might be involved in the criminal activity of graffiti vandalism.

Minor argues his admission that he "used to tag" signified merely that he at some unspecified time in the past may have committed a crime, or that his tagging may have only involved his own property and therefore not been criminal at all. In theory, this could be true. However, based on the officer's training and experience, a tagger would gain no fame from tagging only his own property—the tagging of one's own property worked *in conjunction with* vandalizing other's private or public property to gain fame among other taggers. In addition, common sense indicates that a tagger would gain no fame from displaying his moniker on his personal property when any tagging of publicly viewable property took place very long ago. In any case, despite these theoretically possible, non-criminal explanations for the graffiti on his own backpack and his answers to the officer's questions, these facts were also sufficient to objectively raise a reasonable suspicion that minor was recently or currently engaged in criminal activities.

Finally, minor argues against a slippery-slope rule that would permit police to involuntarily detain "just about any teenager" found in a high-crime area wearing a backpack with suspicious writing, or merely sporting suspicious clothing, tattoos or "other forms of protected speech and modes of self expression." In so arguing, minor neglects the final key fact that leads us to affirm the trial court's denial of the suppression

motion—minor's pre-detention admission that he "used to tag." This general admission that he had engaged in criminal activity in the past, combined with the indication that he *currently* sported a backpack advertising his tagging moniker, was enough to raise the officer's reasonable suspicion that he might currently be engaging in graffiti vandalism. We uphold the juvenile court's order denying the motion to suppress.

2.     *Probation Conditions*

Minor challenges the following two conditions of his probation as constitutionally flawed. Probation term No. 11 requires minor to "[n]ot knowingly possess any dangerous or deadly weapons, including but not limited to any knife, gun, or any part thereof, ammunition, blackjack, bicycle chain, dagger or any weapon or explosive substance or device as defined in Penal Code Section 16100-17360 and/or Penal Code Section 626.10." Probation term No. 20 requires minor to "not possess or have under [his] control any aerosol paint containers, permanent markers or etching devices unless under the supervision of a parent, guardian, instructor or employer."

Minor argues probation term No. 11 must be modified to permit the momentary possession of such weapons for use in self-defense.

Minor argues probation term No. 20 must be modified to include a knowledge requirement.

Although minor did not object to these conditions when they were imposed in the juvenile court, a claim that a probation condition is unconstitutionally flawed is not forfeited on appeal by failure to raise it below. (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.)

A juvenile court has broad discretion to select and impose probation conditions for the purpose of rehabilitating a minor. (*In re Josh W*. (1997) 55 Cal.App.4th 1, 5.) Generally, in the absence of a manifest abuse of that discretion, the court's orders will not be disturbed on appeal. (*Ibid.*) However, the claim that a probation condition is unconstitutionally flawed presents a question of law, which the appellate court reviews independently. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 888.)

### A.     Weapon Possession

Minor contends that, as a matter of the state constitutional right to self-defense, he cannot be precluded from using a deadly weapon in self-defense.

Self-defense is one of the "inalienable rights" secured by the California Constitution. (Cal. Const., art. I, § 1; *People v. McDonnell* (1917) 32 Cal.App. 694, 706.) Statutorily, under Penal Code sections 197, 198, 692, 693, and 694, self-defense and defense of another are defenses to virtually any crime—even to possession of a firearm by a convicted felon. (See generally *People v. King* (1978) 22 Cal.3d 12, 22-23.)

The right of self-defense, however, applies only in an emergency (*People v. King*, *supra*, 22 Cal.3d at pp. 15, 24), in the face of an imminent threat (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064). It does not confer any right to possess a weapon indefinitely, just in case. (*People v. McClindon* (1980) 114 Cal.App.3d 336, 339-340.)

We have the power to construe a probation condition. We also have the power to modify a probation condition to bring it into compliance with the law. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 888.) "'[T]he rule that probation conditions that implicate constitutional rights must be narrowly drawn, and the importance of constitutional rights,

lead us to the conclusion that this factor should not be left to implication.'  [Citation.]" (*People v. Freitas* (2009) 179 Cal.App.4th 747, 751.)  Thus, we will modify the probation condition in accordance with minor's proposed wording.  It will prohibit minor from possessing a deadly or dangerous weapon, "except when such possession is justified because minor is using the weapon in accordance with the law of self-defense."

### B.      Tagging Materials

Minor contends that probation condition No. 20 is unconstitutionally vague and overbroad in that the condition must be subject to a knowledge requirement, i.e., that he must not *knowingly* possess or have under his control any aerosol paint containers, permanent markers, etc.  Minor is correct.  (*People v. Freitas*, *supra*, 179 Cal.App.4th at pp. 751-752.)  The People concede the point.

## DISPOSITION

We direct that probation condition No. 11 be modified to read as follows:  "Not knowingly possess, except when such possession is justified because the minor is using the weapon in accordance with the law of self-defense, any dangerous or deadly weapons, including but not limited to any knife, gun, or any part thereof, ammunition, blackjack, bicycle chain, dagger or any weapon or explosive or device as defined in Penal Code Section 16100-17360 and/or Penal Code Section 626.10."

We direct that probation condition No. 20 be modified to read as follows:  "Do not knowingly possess or have under your control any aerosol paint containers, permanent markers or etching devices unless under the supervision of a parent, guardian, instructor or employer."

In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

KING

J.

MILLER

J.

10